**In re Geraldine Becker SMITH, Debtor.**

**Bankruptcy No. SA 89–07823JB.**

United States Bankruptcy Court,
C.D. California.

Feb. 11, 1991.

Keith Meyer, Fell, Meyer & McCarthy, Santa Ana, Cal., for Neal R. and Patricia Rieffanaugh.

Geraldine Becker Smith, Anaheim, Cal., pro se.

## MEMORANDUM OF OPINION RE CONFIRMATION OF PLAN

JAMES N. BARR, Bankruptcy Judge.

The Debtor, Geraldine Becker Smith, asked me to confirm her plan of reorganization which provides, in part, that the claims of creditors Neal and Patricia Rieffanaugh (hereafter the Rieffanaughs) are disputed and that the Rieffanaughs are to receive no money or other property from the bankruptcy estate on account of their claim, though other claims in the class to which the plan assigns the Rieffanaughs' claim, are to be paid in full shortly after confirmation. The Debtor contends that such treatment in a Chapter 11 plan is permitted and that the Rieffanaughs are deemed to have accepted the plan because the plan leaves all claims in that class, including that of the Rieffanaughs, unimpaired. As discussed in more detail below, the Debtor's contention is based on the plan provision which would leave the Rieffanaughs to whatever they can recover in state court after plan confirmation.

The Rieffanaughs contend that their claim is impaired under 11 U.S.C. § 1124, and thus have the right to vote on the plan; and that the plan violates 11 U.S.C. § 1123(a)(4) by classifying their claim (which is to receive no payment under the plan) in the same class with claims as to which the plan provides for payment in full. They further contend that because the plan would re-vest the Debtor with title to all property of the estate upon confirmation without paying their claim in full, the plan violates the "absolute priority rule" derived from the provisions of 11 U.S.C. § 1129(b)(2)(B)(ii). On those bases they objected to confirmation. I will deny confirmation for the reasons set forth below.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), under which the district courts have original and exclusive jurisdiction of all cases under Title 11, 28 U.S.C. § 157(a), authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district and General Order No. 266, dated October 9, 1984 referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## STATEMENT OF FACTS

The Debtor filed her voluntary Chapter 11 bankruptcy petition on December 7, 1989. Prior to the filing of the petition, the Debtor agreed to sell real property to the Rieffanaughs, consisting of two rented single family residences. A prepetition dispute arose between the parties as to their rights and obligations with respect to said property; but on August 31, 1986 the parties entered into a "Mutual Release Agreement" to resolve that dispute. The Rieffanaughs filed a complaint in state court, prepetition, alleging that the Debtor breached the terms of the Mutual Release Agreement. On April 12, 1990, the Rieffanaughs filed a proof of claim in this case based, at least in part, on that alleged breach seeking approximately $25,000.00. The Debtor objected to the claim and the trial of that matter is on-going.

The Debtor's proposed plan of reorganization places the Rieffanaughs in Class 10, together with the claims of at least two other creditors. The plan provides that Class 10 consists of "All undisputed and disputed unsecured claims which are known and listed, [including] that of Western Bank Bankcard Center, (undisputed), Warren Davis (disputed), Patricia and Neal Rieffanaugh (disputed)." The plan further provides that all Class 10 claims are "unimpaired" and proposes to pay them all in full within 30 days of confirmation of the plan, except the claims of Warren Davis and the Rieffanaughs. As to the latter, the plan proposes "not to alter the legal, equitable or contractual rights of either Warren Davis or Patricia or Neal Rieffanaugh." To accomplish that, the plan goes on to provide that "After confirmation of Debtor's Plan they can pursue any remedies they feel are applicable and available to them."

The Debtor intends to modify the plan to provide for payment of the claim of Warren Davis in full within 30 days of confirmation, i.e., providing that the Davis claim receive the same treatment as the claim of Western Bankcard. The Rieffanaughs would then be the only Class 10 creditors not to be paid in full shortly after the plan is confirmed. That alone, is enough to deny the Debtor confirmation of her plan, for it violates the dictates of 11 U.S.C. § 1123(a)(4) which requires that all claims within a given class receive "the same treatment." However, I will also address the parties' contentions as to the application of 11 U.S.C. § 1124 to obviate re-examination of that matter should the Debtor successfully circumvent the classification problem by amendment to her plan.

## IMPAIRMENT OF CLAIMS

Section 1124 provides that a class of claims or interests is impaired under a plan unless each claim or interest in that class falls within an exception set forth in the subsections of § 1124. The only subsections even arguably applicable to this matter are Subsections (1) and (3).

Section 1124(1) provides that a class of claims is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim ..."

Alternatively, the plan may provide that "on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to (A) with respect to a claim, the allowed amount of such claim ..." [§ 1124(3)]

For an interpretation of § 1124, the Rieffanaughs refer me to the case of *In re Spirited, Inc.*, 23 B.R. 1004 (Bankr.E.D.Pa. 1982). The court there stated that "the mere recognition or noncancellation of a class of claims or interests is not sufficient to render a class unimpaired under § 1124(1)." *Id.* at 1007. The court also concluded that "... a class not entitled to receive any payment or compensation under a plan is treated as impaired." *In re Spirited, Inc.*, 23 B.R. 1004, 1008 (Bankr.E. D.Pa.1982).

The latter of those conclusions was challenged by the court in the case of *In re American Solar King Corp.*, 90 B.R. 808, 821 n. 21 (Bankr.W.D.Tex.1988) which found that holding too broad because, as stated, the rule espoused would lead to the conclusion that a plan is not "deemed ac-

cepted" by a class of equity holders if they receive equity interests in the reorganized Debtor but receive no "payment or compensation" under the plan.

In the case of *In Re Distrigas Corp.*, 66 B.R. 382, 384 (Bankr.D.Mass.1986), the court concluded that "Impairment's meaning is spelled out in 11 U.S.C. § 1124 and has, generally, come to mean in its most basic form any material alteration of the holder's legal, equitable or contractual rights, unless payment in cash is made on the effective date of the plan."

Clearly, the Debtors' plan in this case does not provide for payment of the Rieffanaughs' claim. However, the Debtor would have me follow the reasoning of the court in the case of *In re American Solar King Corp.*, *supra.*, and argues that § 1124 does not require that claims be paid in full, or at all, to find them "unimpaired" if the claimholder is not entitled to payment of cash under the plan. She points out that the Rieffanaughs' claim has not yet been allowed and that, because the plan leaves them the right to proceed on their claims against the Debtor in state court after confirmation, none of their rights are impaired. The Debtor reasons that she is leaving the Rieffanaughs with precisely what they had when this bankruptcy case was commenced, and that therefore, the requisites of § 1124(1) are satisfied.

Courts have consistently interpreted the term "impairment" very broadly; and the great weight of authority and reason lead me to the conclusion that if a plan alters *any* of a claimant's rights *in any respect*, a plan does not leave that claim "unimpaired." [See the extensive discussion of the history and meaning of § 1124 in Judge Mabey's opinion in the case of *In re Barrington Oaks General Partnership*, (Bankr.D.Utah 1981), 15 B.R. 952, 955–967; 5 Collier on Bankruptcy ¶ 1124.03[1] at

1124–13 ("Note that any alteration of the rights constitutes impairment even if the value of the rights is enhanced."); and the review of cases at 5 Collier on Bankruptcy ¶ 1124.03[4] at 1124–18 (15th ed.1980). See also, *In re Acequia, Inc.*, (9th Cir.1986) 787 F.2d 1352, 1363; *In re Madison Hotel Associates*, (D.C.W.D.Wis.1983) 29 B.R. 1003, 1009; *In re Jones*, (Bankr.D.Utah 1983) 32 B.R. 951, 957 ("A class is impaired unless the plan provides one of the three specified alternative treatments.... No creativity, with resulting unpredictability, is permitted.... Section 1124 should establish, as nearly as possible, a bright line test for impairment."); and *In re Elijah*, (Bankr.W. D.Mo.1984) 41 B.R. 348, 350, wherein the court noted that even payment in full of a claim does not leave that claim "unimpaired" if the plan would otherwise alter the claimholder's rights under its debt instrument.]

■ Implicit in the Debtor's argument is her conclusion that the Rieffanaughs' claim entitles them to no rights except the "right" to seek redress in another court after confirmation of her plan. That theory ignores the rights afforded the Rieffanaughs by the Bankruptcy Code itself i.e., the right to have the validity and extent of their claim determined by this court; and the further right to receive property or payment equal to the allowed amount of their claim to the extent there are assets in the bankruptcy estate from which payment can be made.[1]

The Rieffanaughs' proof of claim is sufficient in form and content to support allowance of their claim. [Bankruptcy Rule 3001] Had the Debtor not objected to that claim, it would have been deemed allowed.[2] "Allowance" of claims is generally a prerequisite to payment thereof from a bankruptcy estate.[3]

---

1. The Rieffanaughs do not seek a judgment as to the dischargeability of their claim against the Debtor, so I need not explore the rights of a creditor to seeks payment of claims from assets other than those within the bankruptcy estate.

2. Section 502(a) provides, in part, "A claim or interest, proof of which is filed under section

501 of this title, is deemed allowed, unless a party in interest ... objects."

3. See Section 726 (re distribution of property of the estate to those with "allowed" claims in Chapter 7 cases), and Sections 1129(a)(7) and 1325(a)(4) (re distributions in Chapter 11 and Chapter 13 plans limited to those with "allowed" claims). See also Treister, Trost, Forman, Klee

Obviously, the Debtor may not deprive the Rieffanaughs of their right to allowance of their claim by merely objecting to it. To the contrary, by availing herself of the claim objection process, and thus seeking judicial determination of the Rieffanaughs' rights against her, the Debtor impliedly acknowledged that the Rieffanaughs have the right to allowance of their claim absent objection, and that this court could allow that claim notwithstanding her objection.

The Rieffanaughs' right to payment of their claim, to the extent allowed, is defined by reference to various parts of the Code. As noted earlier, Section 101(4) defines "claim" as the "right to payment ..." Without more, that is sufficient to define the protectable "right." However, to put a finer point on it, Section 1129(a)(7) provides that unless each holder of an impaired claim has accepted a Chapter 11 plan, if a plan is to be confirmed, that claimholder must receive at least what it would have received if the debtor's assets were liquidated under Chapter 7 of the Code. Section 726 provides for distribution of all assets of a debtor's bankruptcy estate to holders of allowed claims in a Chapter 7 case, according to the priorities established therein. The Rieffanaughs' claim would fall within Section 726(a)(2) if and when allowed (i.e., a general unsecured claim). Thus, the Debtor's quest for a confirmed plan of reorganization gives rise to the Rieffanaughs' right to payment of their claim to the extent it is allowed, limited only by the extent of the assets in the bankruptcy estate.

In summary on this point, a plan may limit payment of claims to "the extent allowed," without impairing them; for until claims are allowed, or deemed allowed, the holders thereof are not entitled to distribution from the bankruptcy estate. However, impairment results if the plan denies claimholders the right to payment to the extent their claims are ultimately allowed.

In addition, by objecting to the Rieffanaughs' claim, the Debtor has presented to this court the question of the validity and extent of the Rieffanaughs' claim against her; and the state court would be bound by my decision in any later action by the Rieffanaughs against the debtor. *United States v. Coast Wineries, Inc.,* (9th Cir. 1942) 131 F.2d 643, 648 ("... an order disallowing a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.") Thus, the Rieffanaughs' "right" to proceed against the Debtor after plan confirmation is illusory.

For all of these reasons, the Rieffanaughs' claim is impaired as matters stand at this time. Therefore, the presumption of plan acceptance provided for in 11 U.S.C. § 1126(f) does not apply to the Rieffanaughs. However, it does not follow that they are therefore entitled to vote on the Debtor's plan at this time.

### APPLICATION OF RULE 3018(a)

Rule 3018 lists the entities who may vote on whether to accept or reject the plan.[4] Because of the Debtor's objection to

---

& Levin, *Fundamentals of Bankruptcy Law,* (Second Printing, 1987), wherein the following universally accepted rule is noted:

"Having a claim does not of itself entitle a creditor to share in the distribution of the assets of the bankruptcy estate; the claim also must be *allowed.* Except for certain secured claims held by creditors who wish to look only to the value of their collateral for payment, ... every claim must go through the allowance process before its holder is entitled to a distribution on account of the claim." *supra.* at p. 255 (§ 6.02)

4. Bankruptcy Rule 3018(a) provides, in pertinent part: "A plan may be accepted or rejected by the following entities within the time fixed by the court pursuant to Rule 3017: (1) any creditor whose claim is deemed allowed pursuant to § 502 of the Code or has been allowed by the court; (2) subject to subdivision (b) of this rule, any creditor who is a security holder of record at the date the order approving the disclosure statement is entered whose claim has not been disallowed; and (3) an equity security holder of record at the date the order approving the disclosure statement is entered whose interest has not been disallowed."

The term "security" is defined in 11 U.S.C. § 101(45)* to include not only stocks and bonds, but also such documents as promissory notes, and certificates of deposit. However, the list does not include simple written bilateral

their claim, and the resulting invocation of 11 U.S.C. § 502(a)[5], the Rieffanaughs' claim is not allowed or deemed allowed, thus subsection (a)(1) of Rule 3018 does not apply to them. Neither of the other subsections of that rule have application in this case because the Rieffanaughs hold no "securities" of the Debtor, as that term is defined in 11 U.S.C. § 101(45), and claim no security for their claim. Therefore, the Rieffanaughs are not entitled to vote on the Debtor's plan at this time.

## THE ABSOLUTE PRIORITY RULE

■ The Rieffanaughs contend that the Debtor's plan violates the so-called "Absolute Priority Rule" derived from 11 U.S.C. § 1129(b)(1) and (2); and clearly it does.

Those sections obviate confirmation of a plan over the Rieffanaughs' objection unless I find that as to them, the plan is "fair and equitable." Section 1129(b)(2)(B) defines the minimum requisites for such a finding in this instance, for the Rieffanaughs have an unsecured claim.[6]

Applying the provisions of that section to this case, the Debtor may not retain any property of the bankruptcy estate unless the Rieffanaughs' allowed claim is paid in full. The Debtor's plan calls for re-vesting

in her, all property of the estate upon confirmation of that plan; but clearly makes no provision for payment of the Rieffanaughs claim.[7] Therefore, I cannot find it fair and equitable as to the Rieffanaughs.

The provisions of 11 U.S.C. § 1129(a)(1), obviate plan confirmation if the plan does not comply with any part of that section. Because it does not comply with § 1129(b)(2), the Debtor's plan cannot be confirmed at this time.

I will deny the Debtor ·confirmation of her plan of reorganization because the plan fails to comply with the provisions of 11 U.S.C. §§ 1123(a)(4) and 1129(b)(2); and an order will issue accordingly. This memorandum serves as my findings of fact and conclusions of law on this matter.

---

contracts for performance of non-monetary obligations, wherein neither party could be considered the "holder" thereof. [* P.L. 101–647, enacted Nov. 29, 1990, may actually result in redesignation of § 101(45) to § 101(49), but Congressional intent in that regard is unclear.]

5. See Note 2, *infra*.

6. The provisions of 11 U.S.C. § 1129(b)(1) relevant to this case, read "... if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan ... if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests which is impaired under, and has not accepted the plan." Subsection 1129(b)(2) goes on to provide that "For purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:"; and Subsection 1129(b)(2)(B) completes that phrase by providing that "With respect to a class of unsecured claims (i) the plan [must provide] that

each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

7. Section 1129(b)(2)(B)(i) requires that the plan provide creditors with "property" equal to the allowed amount of their claims, if it would also re-vest in the Debtor any property of the estate. As noted earlier, the Debtor's plan fails to provide the Rieffanaughs with *cash* for their claim, in the event it is allowed.

Theoretically, the plan could be said to provide the Rieffanaughs with "property" in the form of the alleged "right" to proceed against the Debtor in state court after confirmation. However, in this instance, such is mere sophistry for, as noted above, that "right" is illusory. I leave it to other courts to determine if that ruling has the breadth of a rule with more universal application.